Nolan *v.* Webber (et al., Appellant).

Argued November 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Hugh S. Millar,* with him *J. Campbell Brandon,* and *Brandon, Millar & Rockenstein,* for appellant.

*John H. Marshall,* with him *Marshall, Marshall & McNamee,* for appellee.

OPINION BY ERVIN, J., March 18, 1959:

These are two actions in trespass arising from a right angle collision between two automobiles. Webber sued Zarnick for the property damage to his vehicle and Nolan, a passenger in Webber's automobile, sued both drivers, Webber and Zarnick, for personal injuries, medical expenses and loss of wages. Both cases were tried together. At the end of Nolan's case a nonsuit was entered in favor of Webber. A verdict was returned in favor of Nolan against Zarnick in the amount of $3,700.00. Another verdict was returned in favor of Webber against Zarnick in the amount of $154.11. From the refusal of motions for judgment n.o.v. and for new trial, the defendant Zarnick appeals.

On June 22, 1952, at or about 6:00 p.m., Webber was operating his automobile in a southerly direction on Meridian Road, Route No. 328, at or about its intersection with Whitestown Road, Butler Township, Butler County; Zarnick was operating his vehicle in a westerly direction on Whitestown Road at or about its intersection with Meridian Road; there was a stop sign against traffic on Whitestown Road; both highways were two lanes wide; it was raining; Webber was operating his vehicle at a speed of 30 miles an hour on his right-hand side of the road when Zarnick came out of Whitestown Road and collided with Webber's automobile, damaging the left rear fender and wheel. As a result of the collision, Nolan suffered personal injuries.

One witness testified as to a conversation with Zarnick which took place immediately after the accident, as follows: "I asked him why he didn't stop. He said, 'Lady, I did stop, but I come out too fast.' That's all he said."

In view of the testimony produced the court below acted properly in granting a nonsuit as to the defendant Webber and refusing to grant a nonsuit as to the defendant Zarnick, at the close of Nolan's case. Furthermore, we think that there was evidence from which the jury could find that Zarnick was negligent.

Zarnick testified that he stopped for the stop sign, allowed a Buick, going north on Meridian Road, to pass, looked both ways and proceeded into the intersection. On cross-examination he testified as follows: "I came to the stop sign and stopped and a Buick heading toward the east [sic] went by. I pulled into the intersection. I didn't see another car coming. . . . Here's the point: I didn't see the car until he was in the intersection. I was out in the intersection when I heard the horn. He was still on my right. I was

in the intersection at the time he was still on my right." He testified further: "Q. I would like to hear once again your explanation for not seeing the Webber car which was very obvious on the road to your north. A. I have no explanation for not seeing it. Simply, I didn't see it until I heard the horn. Q. Then, as I understand, you have no explanation for not seeing the Webber car? A. That's right." Yet at another time Zarnick testified that when he first saw the Webber car it was 5 or 8 car lengths away from him.

When asked where his automobile stopped after the accident, Zarnick finally testified: "Q. About the center of the road, it could be either at the center or on the center? A. That's right."

The driver on a through highway has the right to assume that persons approaching on an intersecting street will obey a stop sign and yield the right of way: *Cericola v. Redmon,* 182 Pa. Superior Ct. 19, 124 A. 2d 417.

"Traffic lights and 'Stop' signs are installed to facilitate the flow of traffic. When one has the right of way by virtue of being on a through street or having a green light he must not be held to the exact degree of care that would have been required of him had there been no light or stop sign in his favor at the intersection. To hold otherwise would thwart the purpose of through highways and traffic lights to facilitate the flow of traffic." *Cericola v. Redmon,* supra, at p. 23.

It was Zarnick's duty not only to stop for the stop sign but to look and to continue to look as he crossed the intersection in order to avoid a possible collision: *Porreca v. North Cleaners and Dyers, Inc.,* 146 Pa. Superior Ct. 504, 508, 23 A. 2d 72.

While the operator of an automobile does not have to see every car within the range of his vision, it was

72

Zarnick's duty, under the facts of this case, to see Webber's car. He failed to do so and offered no reasonable explanation for his failure. The law will not permit a driver to say that he looked when he had an unobstructed view without seeing what must have been within the range of his vision: *Clee v. Brinks, Inc.,* 135 Pa. Superior Ct. 345, 5 A. 2d 387.

Judgments affirmed.